2-10-10-52, Wilson Park Collision v. Kevin Olsen Good morning, Your Honor. May it please the Court, the Counsel, the Action Agent, and the Defendant Appellant's Accident and Accident Insurance Company, Miami. Thank you for your response to the Park Collision. This case, I think, is a manifestation of the confusion that frequently reigns at the Commission in interpreting... Manifestation of the confusion or manifest date of injury case? It is a manifest date of injury case. Correct, Your Honor. There may be some manifest confusion, you're arguing, but... Yes. I guess it ties in with the Commission, right? Essentially, there is a lesion of case law since the period of 2011. Repetitive common cases and the claimants were approved, and the manifestation date, the accident date. And that is what is at issue here. The Supreme Court's pronouncement in Duran v. Industrial Commission in 2006 was a case relied on by the arbitrator and essentially all parties, as well as the determination of the accident date. Duran, I think, in its entirety, goes to great lengths to be an essay or a large article on the state of prior decisions of manifestation date of repetitive common cases and what courts should consider and how the Commission should determine them. In Duran, ultimately, the Supreme Court said that the claimant's first date of treatment would be the manifestation date. And in so doing, they allowed the claimant to obtain benefits for her claim because her application was filed within three years of that date. The argument has been raised by the employer of Duran, based on some prior case law manifestations, that Duran's reports prior to her treatment of complaints and her wrists and hands that she felt were related to her work occurred at a point more than three years after the application, or just when the claim was filed. So they were denying the compensation entirely. The Supreme Court looked at all the facts and looked at all the case law and determined on a fundamental fairness concept that a first date of treatment could be a factor in determining manifestation date. Well, how does that help you here? Well, it doesn't help me. Right, because the first date of treatment, arguably, is when he went to see the doctor with his son. Correct. Arguably, the causal connection to work was made by the doctor. Correct. And that's the point I want to raise. The arbitrator, in this case, essentially took the specific finding of accident date by the Supreme Court in Duran, ignored all the discussion in Duran of what should be considered, and the fairness principle in general, and said, well, the first date of treatment is October 23. That falls within accident-informed coverage. So accident-informed is liable for the violence hearing. And then in so doing, in an issue, I mean, a primary issue, but then in order to reimbursement for seven years of absence paid by the insurance carrier for the date of injury, that that one was alleged by the claimant, supported by the claimant, and supported by all the medical testimony, but occurred with a prior insurance carrier, and should have been an argument of the accident date. All right, so cutting to the chase. Obviously, you don't want the manifestation date to be October. You want it to be September, because if it's September, then you're not on the hook. Correct. So tell us why the commission erred in setting the manifestation date on October 23rd, when that was the date that he went to the doctor. Now, granted, he went and indicated to his supervisor he had a problem with his hand, okay? But looking to Duran, which is the case you're citing, the seminal case, the employee in a repetitive trauma case must identify a manifestation date. That's a date within the limitations period on which both the fact of the injury, you can argue that his hand, you know his hand was bothering him, and two, the causal relationship of the injury to the employment would have become plainly apparent to a reasonable person. So you're confronted with the issue or the argument, hey, look, he knows his hand is bothering him in September, okay? He doesn't know what it is. He continues to perform his regular duties. He goes in to take his son to the doctor, and the doctor says, how's it going? And he says, well, you know, I've got this problem with my hand. The doctor says, well, wait a minute. You know, this is probably related to your work. So why did the commission err in adopting that position? Because the evidence also shows that on September 25th, he reported the condition of his hand to his supervisor and manifested a believable understanding of a possible relationship to the employment because he agreed that the reason he brought this up to the supervisor on September 25th was because the company had a policy reporting for it against him, and he was compliant with that. So as of that date, prior to the first date of treatment, there's evidence of an awareness of an injury in this possible relationship to his employment by Mr. Olson, and the reason that's significant is because this report said, citing Oscar Meyer and Marianne Castaneda, that he might be involved in this procedure, that to fix the first date of treatment or medical diagnosis is not consistent with the law of repetitive trauma cases, that you can't always do that. You can't always do that, arguably. On the other hand, merely are you saying that somebody says to his employer, gee, my hand is bothering me, means automatically in a repetitive trauma case he knows it's connected to his work and not some personal matter? So you're confronted with these two different arguably ostensible theories here. Why can't the commission, on the basis of the evidence, choose one over the other without erring? Because in this case, the impact of the commission's decision did not adversely affect Mr. Olson because the evidence that the private employer had and that its insurer, Mr. Norman 25, had, was that he reported an injury that manifests itself on that date. And once he started seeking treatment, and once he started losing time, he was compensated for all those benefits by his insurance carrier on that date. So when did he start seeking treatment, in your opinion? October 23, 2001 would be the first day that he went for treatment. Did he seek treatment? Did he go to the doctor to seek treatment on October 23? There is medical evidence in the record that there was an examination of the conditioner by Dr. McCarty on that date and recommendations in the treatment. Are you disputing the fact that the evidence established clearly he went to take his son to the doctor? Isn't that what happened? That was his testimony. It's not corroborated by any other thing than his testimony. The medical evidence shows that he appeared before Dr. McCarty on October 23, raised his hand with an examination diagnosis. But he took his son there as the primary reason. You're saying there's nothing to corroborate it. Can't the Commission believe him? Right. The point of the matter is, Your Honor, that if he had gone to the doctor on October 23, 2001, and we never said anything to the supervisor previously, and then one day I came to work on October 24 and said to the supervisor, you know, I asked him about, you know, the doctor yesterday, he said it might be related to work. What do I do, you know, fill out an asking report? The asking report dated October 23, 2004, 2001, and now the employer notifies the insurance carrier that you have an accident fund. And the accident fund isn't on the ground floor looking at this and making determinations and whatever we need to. And if they need to, this is not the case. You're not suggesting that a claimant has an obligation to notify an insurance carrier in an accident fund? Absolutely not, Your Honor. The problem with this case is that there was no basis to consider for accident funding to consider an accident for which it was liable to Mr. Olson at any time prior to June 25, 2004 when he first filed the application for a justice on the claim. So, yeah, I raised a notice issue because we're clearly prejudiced by lack of notice of an injury to that point. The fact of the matter is that he had evidence, overwhelming evidence of an injury in September 2011, not only by his reporting of it, but by his subsequent medical histories and all the medical opinions. And the reason why September 23, 2001 is not supported by this record is from all the evidence that dictates September 25, 2001, from the case law in Iran, which explains how cases should be determined in this regard, including all factors, including fairness, to, believe it or not, insurance companies. And that's what the courts have said. So, the fact that the accident fund was not even aware of a claim against it until June 2004, the claimant had medical opinions from the insurance carrier for September 25, 2001, causing the day his condition and all his treatment to September 25, 2001. Wait a minute. Are you trying to have it both ways? You're arguing on one hand that the manifestation date is September 25th because then he goes to the employer and indicates to them, in your opinion, he's got this work-related injury. If that's the case, then how are you claiming that the carrier has no notice of that accident? If the manifestation date is September 25th, then how do you get it noticed later? Well, a carrier has a time frame on having notice of that accident. In fact, it may be October 22, the bill has started paying off. Okay, fine. So what's it got to do with you? Is the claimant responsible for that? What that has to do with me, with the accident fund, is that we are not faced with an order not only of permanency, wager, parental benefits, for an accident date that was never alleged by him, and for an accident date that was, that he did allege with an accident fund coverage that there's been no support for that. If we're not allowed to do that, and more importantly, and more offensively, we are not obligated to reimburse the guarantee fund  Well, that segues into maybe your most compelling argument. What is your argument Give us your best argument on that issue. The reason that there is Well, we could, but I think we're sort of hit that quite a bit already. First of all, I don't think Section 546A applies to the guarantee fund that it was concurrent coverage. There was no concurrent coverage. Every accident date alleged by the petitioner there was only one insurer. So I don't think that there was a basis for the award of reimbursement. Now, from the standpoint of the arbitrator having to be equitable perhaps, the fact of the matter is that the accident fund again had no ability to defend this claim until June 25, 2004 when the application was first filed. By that point, Mr. Olson had had six surgeries to his hand, and shortly after that point had already incurred this substantial portion of the lost time limit that had already incurred before the accident fund had any notice whatsoever that it even had a claim to defend for a financial allegation. Secondly, the arbitrator found, I think correctly, that if the first treatment is October 3, 2001, which it is, now the arbitrator says, I'm sorry, Dr. Carlson, the third choice respondent is not liable for any of the bills. However, the respondent guaranteed funds, not accident funds, paid those bills, never raising the argument, so the arbitrator is not going to punish the petitioner for the guarantee funds failed to raise that issue by making it a credit because the guarantee funds failed to raise it. The accident funder had an opportunity to until 2004, and with an entry date of November of 2001, we actually don't have three doctors on our case, so it's not moving clear for us unless the petitioner had alleged October 23, 2001 as an entry date. So not only did we not have the accident fund, because the guarantee funds failed to deliver it, we're liable for all those benefits. We're getting three years of benefits paid before we even have an accident case. And that's, I think, the biggest injustice to this claim. Whenever the employer applied for insurance with accident fund, was there a written application probably? I suspect not. And did the employer likely have to indicate on that application all notices of injury that they'd received that were pending so that accident fund probably did know about this claim? They would have known perhaps about the September 29, 2005 claim, sure. But they knew that there was something out there? I would have to presume that. So there was maybe a manifestation date type case? Well... It's probably not on the record, I'm just asking it as a practical matter. It's not on the record, and yes, I'm not sure that that imposes any obligation on them to ensure that it's due to prior accident. And certainly the employee had no obligation to notify some other insurer. He only had to notify his employer. Absolutely. And so he did everything he had to do under the Act. Absolutely. But again, the problem is that there was no opportunity, no notice, no availability of accident funds to even investigate this earlier. And on top of it, the benefits had to get in the case of Mr. Olsen. I know it's not an initial liability, but in any sort of practicality sense, there would be no basis for accident funds to start looking into accidents that occurred prior to the commission being taken care of. If the issue had been raised previously by the accident fund, by the guarantee fund or remand, then, you know, it would have tributed earlier. But even at that point, the motion was out by the guarantee fund. By virtue of this reimbursement report, most of the damage had been done by that point anyway. So even if they prosecuted the accident,           So I think the motion is out. I think the motion is out. I think the motion is out. I think  I don't I I can't do anything to support this motion. In the past, during the first session of this commission, I have been  on this case. I would refer the court to the case of the hospital hire versus the industrial commission where this court held that the date of which an employee notices a repressive behavior in   during the first session of this commission. I would refer the court to the case of the hospital hire versus the industrial commission where an employee notices a first session of this court.   refer the      hire versus the industrial commission where an employee notices a repressive behavior in during the first session of this court. I would refer the the court to the industrial commission where the industrial commission where   notices a repressive behavior